_____

No. 96-2273
_____

Eagle Window & Door, Inc.,           *
                                     *
              Petitioner,            *
                                     *
      v.                             *
                                     *
National Labor Relations Board,      *
                                     *
              Respondent.            *

_____                    Petitions   for   Review   of   an
                                             Order of the National
Labor              No. 96-2531       Relations Board.
              _____

Eagle Window & Door, Inc.,           *
                                     *
              Respondent,            *    [UNPUBLISHED]
                                     *
      v.                             *
                                     *
National Labor Relations Board,      *
                                     *
              Petitioner.            *
                                 _____

                    Submitted:  November 12, 1996

                       Filed:  January 7, 1997
                                 _____

Before FAGG, BEAM, and HANSEN, Circuit Judges.
                                 _____


PER CURIAM.


        Following a vigorous campaign, a union certification election was
held at Eagle Window & Door's manufacturing plant in Dubuque, Iowa.  The
union was declared the winner, but only by a few votes.  Eagle challenged
the election because the National Labor Relations Board (the Board) refused
to count the ballots of thirty-eight factory group leaders.  The Board
rejected Eagle's challenge

because it decided the group leaders worked as supervisors at Eagle's plant, and thus they were ineligible to vote in the union election. See 29 U.S.C. §§ 152(3), (11) (1994). The Board then ordered Eagle to bargain with the union, and Eagle petitioned for review.

Eagle manufactures windows and doors on an automated assembly line. The employees working along the line generally perform the same repetitive tasks each day. Eagle's entire production process is separated into about sixteen departments operating under the direction of thirteen acknowledged supervisors. Each department is divided into teams that are guided by the challenged group leaders. Although the group leaders spend most of their day working on the assembly line, the group leaders also distribute daily work assignments based on computerized production schedules prepared by upper management, check the daily work against predetermined specifications, monitor workplace safety, and provide their supervisors with worker evaluations. Group leaders cannot hire, fire, or effectively impose discipline on any employee.

Under the National Labor Relations Act, a supervisor is defined as any employee who has the authority

> to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11). Recently, the Board recognized that it "has a duty not to construe the statutory language too broadly" and concluded "[o]nly individuals with `genuine management prerogatives' should be considered supervisors, as opposed to `straw bosses, leadmen . . . and other minor supervisory employees.'" Panaro & Grimes, A Partnership D/B/A Azusa Ranch Mkt., 321 N.L.R.B. No. 112, 1996 WL 410877, at *2 (July 19, 1996)

(quoted case omitted).  Thus, the Board maintains "an individual who exercises some `supervisory authority' only in a routine . . . or perfunctory manner will not be found to be a supervisor." Id. (quoted case omitted).  Understandably, it is not an easy task for the Board to make the call on whether group leaders with differing degrees of responsibility exercise statutory supervisory authority.  Compare S.D.I. Operating Partners, L.P., 321 N.L.R.B. No. 24, 1996 WL 233631, at *1 (Apr. 30, 1996) (group leaders are not supervisors); Quadrex Envtl. Co., 308 N.L.R.B. 101, 101-02 (1992) (same); Somerset Welding & Steel, Inc., 291 N.L.R.B. 913, 913-14 (1988) (same); with ITT Lighting Fixtures, 249 N.L.R.B. 441, 442 (1980) (group leaders are supervisors); Richardson Bros. Co., 228 N.L.R.B. 314, 314 (1977) (same).

In this case, the Board adopted a hearing officer's findings that Eagle's group leaders were supervisors for two reasons: (1) the group leaders played a significant role in the evaluation of the other employees, and (2) the group leaders directed the work within their department.  See Schnuck Mkts., Inc. v. NLRB, 961 F.2d 700, 703 (8th Cir. 1992) (supervisory employees must possess at least one of the § 152(11) powers).  Of course, the Board's decision is entitled to deference so long as it is supported by substantial evidence on the record as a whole.  See id. at 703-04. Having carefully reviewed the record, we conclude the Board's decision is not supported by substantial evidence.

Initially, we believe the Board's hearing officer attached too much significance to the group leaders' role in the evaluation process. Although Eagle's group leaders provided their supervisors with a preliminary evaluation of the other team members' work, the supervisors were responsible for the employees' final evaluations.  See Hexacomb Corp., 313 N.L.R.B. 983, 984 (1994).  Nevertheless, the hearing officer felt Eagle's group leaders were independently evaluating their team members like the leadmen in Iron Mountain Forge Corp., 278 N.L.R.B. 255, 255 n.1 (1986). In Iron Mountain

Forge Corp., however, only three of the leadmens' initial evaluations were ever changed by the reviewing officer. See id. at 259. In contrast, the initial evaluations by Eagle's group leaders were often rejected or modified by their supervisors. In our view, Eagle's situation is more like the Board's holdings that the "`[a]uthority simply to evaluate employees without more is insufficient to find supervisory status.'" Quadrex Envtl. Co., 308 N.L.R.B. at 101 (quoted case omitted); see Somerset Welding & Steel, Inc., 291 N.L.R.B. at 914.

Similarly, we find no substantial support for the hearing officer's finding that Eagle's group leaders were statutory supervisors when they directed their team's work. The group leaders merely passed out routine work assignments and made sure the work was completed according to predetermined schedules and specifications. In so doing, the group leaders did nothing more than draw on their own on-the-job expertise and experience. See Quadrex Envtl. Co., 308 N.L.R.B. at 101; Somerset Welding & Steel, Inc., 291 N.L.R.B. at 914. Thus, the group leaders' duties did not involve the kind of "real managerial discretion that [called for] the exercise of independent judgment." S.D.I. Operating Partners, L.P., 1996 WL 233631, at *1. Likewise, we find nothing in the supervisors' consultation with the group leaders incidental to the supervisors' decisions about overtime and employee transfers, or the group leaders' role in making sure the daily work was performed safely, that alters our view the group leaders did not exercise statutory supervisory authority.

Finally, we reject Eagle's argument that the election should be set aside because the union's campaign tactics materially affected the election results. We believe the hearing officer's findings on this issue are supported by substantial evidence on the record as a whole and no useful purpose would be served by an extended discussion.

Having concluded that the contested ballots must be counted, we remand to the Board for further appropriate proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.